IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHARITY STEPHEN-WHITEAKER | ) | CASE NO.: |
| 1176 Dafler Rd | ) | |
| West Alexandra, Ohio, 45381 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR VIOLATIONS OF |
| v. | ) | THE FAIR LABOR STANDARDS ACT |
| | ) | AND THE OHIO MINIMUM FAIR |
| GASPER TOWNSHIP BOARD OF | ) | WAGE STANDARDS ACT |
| TRUSTEES | ) | |
| 4195 Paint Creek Road | ) | |
| Eaton, Ohio, 45320 | ) | (Jury Demand Endorsed Herein) |
| | ) | |
| -and- | ) | |
| | ) | |
| TIMOTHY HALCOMB | ) | |
| 1739 Old Camden Pike, | ) | |
| Eaton, Ohio, 45320 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Charity Stephen-Whiteaker, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

**PARTIES**

1. Stephen-Whiteaker is an individual residing in West Alexandria, Ohio.

2. Gasper Township Board of Trustees ("Gasper") is a is a political subdivision of the State of Ohio.

3. At all times referenced herein, Halcomb was the Chief of the Gasper Township Fire Department.

**PERSONAL JURISDICTION**

4. Defendants hire citizens of the state of Ohio, contracts with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

1

5.   Stephen-Whiteaker performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

6.   This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

7.   This Court has personal jurisdiction to render judgment against Gasper pursuant to Federal Rules of Civil Procedure rule 4(k)(1)(a) as Gasper is a political subdivision of the State of Ohio and is therefore subject to General Jurisdiction in the State of Ohio.

## SUBJECT MATTER JURISDICTION AND VENUE

8.   This Court has original subject matter jurisdiction of this case under 28 U.S.C. §§1331 and 1341, inasmuch the matters in controversy are brought pursuant to the FLSA, 29 U.S.C § 215, 216, *et seq*.

9.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Stephen-Whiteaker's state law claims under the Ohio Minimum Fair Wages Standards Act ("OMFWSA") and the Ohio Constitution because those claims derive from a common nucleus of operative facts.

10.  Venue is proper with this Court pursuant to 28 United States Code section 1391(b)(2) as the events that gave rise to Plaintiffs' claims for relief.

## COVERAGE

11.  At all times referenced herein, Gasper was a covered enterprise that engaged in the activity of a public agency, within the meaning of Section 3(s)(1)(c) of the FLSA, and was an "employer" within the meaning of O.R.C § 4111.14(B).

12.  At all times referenced herein, Halcomb supervised and/or controlled the employment of Stephen-Whiteaker with Gasper and acted directly or indirectly in the interest of Gasper in relation to its employees, including controlling and/or establishing its day to day operations and respective compensation practices; therefore, Halcomb is an employer within the

meaning of Article II, Section 34a of the Ohio Constitution and the Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 203(d), O.R.C § 4111.14(B).

## FACTS

13. Stephen-Whiteaker is a former employee of Gasper.

14. Stephen-Whiteaker was first hired by Gasper as a Paramedic in 2013.

15. In 2014, Stephen-Whiteaker was promoted to the position of EMS Coordinator.

16. At all times referenced herein, Stephen-Whiteaker was paid on an hourly basis.

17. Until March of 2019, Stephen-Whiteaker typically worked 60 to 70 hours per week.

18. At all times referenced herein, Stephen-Whiteaker was not trained in the prevention, control or extinguishment of a fire.

19. At all times referenced herein, Stephen-Whiteaker did not have legal authority or responsibility to engage in the prevention, control or extinguishment of a fire.

20. As an EMS Coordinator, Stephen-Whiteaker did not engage in the prevention, control, or extinguishment of fires or response to emergency situations where life, property, or the environment were at risk.

21. At all times referenced herein, Gasper did not formally or informally adopt any regularly recurring workweek or work period longer than seven days.

22. As an EMS Coordinator, Stephen-Whiteaker was entitled to overtime pay for all hours worked over 40 in a single workweek.

23. Defendants failed to pay Stephen-Whiteaker overtime for any hours she worked over 40 in a single week, in violation of the FLSA and the OMFWSA.

24. In or around December of 2018, Stephen-Whiteaker complained to Halcomb that she believed that she should be paid overtime when she worked more than 40 hours per week ("Overtime Complaint").

25. Halcomb responded to Stephen-Whiteaker's Overtime Complaint with explosive anger.

26. Halcomb responded to Stephen-Whiteaker's Overtime Complaint by threatening to immediately terminate her.

27. Halcomb responded to Stephen-Whiteaker's Overtime Complaint by stating "you better think about who you are fucking with Charity."

28. Halcomb responded to Stephen-Whiteaker's Overtime Complaint by removing several of her job duties, to include Stephen-Whiteaker's billing, payroll, and scheduling duties.

29. Halcomb's removal of several of Stephen-Whiteaker's job duties was retaliatory.

30. Halcomb's removal of several of Stephen-Whiteaker's job duties was an adverse action against Stephen-Whiteaker.

31. Subsequently, Stephen-Whiteaker complained about Halcomb's retaliation to Gasper's Board of Trustees.

32. The Board of Trustees refused to take any action regarding Halcomb.

33. Subsequently, Halcomb returned payroll duties to Stephen-Whiteaker, stating "do it your fucking self."

34. In or around February of 2019, Stephen-Whiteaker complained to Holcomb again about not being paid overtime ("Second Overtime Complaint").

35. Holcomb ignored Stephen-Whiteaker's Second Overtime Complaint, stating "we'll talk about it later."

36. A few days after Stephen-Whiteaker made her Second Overtime Complaint, she and Holcomb were discussing an upcoming meeting that Stephen-Whiteaker planned to attend as a representative of the Gasper Fire Department when Holcomb asked Stephen-Whiteaker if she thought he need to attend the meeting or if he and Stephen-Whiteaker should both attend the meeting.

4

37. Before Stephen-Whiteaker could respond to Holcomb, he stated that he believed it was only necessary for him to attend the meeting.

38. Stephen-Whiteaker responded to Holcomb by telling him that she would let employees know that he would not be at the Fire Department the day of the meeting because he was attending the meeting.

39. Holcomb responded to Stephen-Whiteaker by snapping "if you're not going to the meeting, there is no reason for you to be the EMS Coordinator because you don't do anything."

40. Stephen-Whiteaker was alarmed by Holcomb remarks that she did not need to be the EMS Coordinator and that Holcomb believed that Stephen-Whiteaker "[does not] do anything."

41. Stephen-Whiteaker clarified to Holcomb that she never said she would not go to the meeting.

42. Holcomb responded to Stephen-Whiteaker's clarification by stating "what-the-fuck-ever. I don't care what you do."

43. Subsequently, Holcomb demoted Stephen-Whiteaker to the position of paramedic, effective March 19, 2019.

44. Defendants demoted Stephen-Whiteaker in retaliation for her complaints about overtime.

45. Defendants cut Stephen-Whiteaker's pay by $1.50 per hour in connection with her demotion.

46. Defendants took Stephen-Whiteaker's health insurance benefits away in connection with her demotion.

47. Defendants cut Stephen-Whiteaker's hours from 60 to 70 a week to approximately 48 hours per week in connection with her demotion.

48. Defendants' demotion of Stephen-Whiteaker was an adverse action against Stephen-Whiteaker.

49. As a paramedic, Stephen-Whiteaker was not trained in fire suppression and did not engage in or perform any firefighting or fire suppression work.

50.  As a paramedic, Stephen-Whiteaker's primary job duties were to transport persons in need of medical care.

51.  As a paramedic, Stephen-Whiteaker was not regularly dispatched to fires, crime scenes, riots, natural disasters, and/or accidents.

52.  As a paramedic, Stephen-Whiteaker was entitled to overtime pay when she worked greater than 40 hours per week.

53.  Defendants did not pay Stephen-Whiteaker overtime for any hours she worked over 40 in a single work-week as a paramedic.

54.  As a result of her demotion, Stephen-Whiteaker was forced to seek other employment to obtain health insurance benefits and to increase her income.

55.  In or around June of 2019, Stephen-Whiteaker obtained secondary employment with an area hospital.

56.  Stephen-Whiteaker notified Halcomb that she had obtained secondary employment.

57.  Stephen-Whiteaker told Halcomb that she was forced to obtain secondary employment because of her demotion.

58.  Stephen-Whiteaker told Halcomb she would prefer to be restored to her prior position as the EMS Coordinator, or alternatively, to receive the same pay and benefits she had in that position while working as an EMS.

59.  Halcomb told Stephen-Whiteaker he was "glad" she found secondary employment and asked her if she planned on quitting her employment with Gasper in favor of the hospital.

60.  Stephen-Whiteaker declined to quit her employment with Gasper and told Halcomb she continued to prefer that the terms and conditions of her employment be restored.

61.  Subsequently, Stephen-Whiteaker transitioned to a "fill-in" schedule with Gasper, and only worked for Gasper when she was needed.

6

62. Until approximately March of 2020, Stephen-Whiteaker continued to plead with Halcomb to restore her terms and conditions of employment.

63. Halcomb refused to restore Stephen-Whiteaker's former pay, hours, or benefits.

64. As a result of Defendants' unlawful conduct, Stephen-Whiteaker was forced to resign her employment with Gasper in March of 2020 in favor of working greater hours for the hospital.

65. As a result of Defendants' wrongful conduct, Stephen-Whiteaker suffered damages, and continues to suffer damages.

## COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA
## (29 U.S.C. § 207).

66. Stephen-Whiteaker restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

67. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

68. Stephen-Whiteaker was not exempt from the right to receive overtime pay under the FLSA during her employment with Defendants.

69. Stephen-Whiteaker was not exempt under Sections 7(k) or 3(y) of the FLSA because she was not trained in firefighting or fire suppression; was not legally authorized to engage in firefighting or fire suppression; and did not perform firefighting or fire suppression as part of her primary job duties.

70. Stephen-Whiteaker is entitled to be paid overtime compensation for all overtime hours worked.

71. As a result of Defendants' failure to properly compensate Stephen-Whiteaker for all hours she worked in excess of forty in a given week at a rate not less than 1.5 times Stephen-Whiteaker's regular rate of pay, Defendants violated the FLSA, 29 U.S.C. §§ 201 et. seq.,

7

including 29 U.S.C. § 207(a)(1) and § 215(a).

72. Stephen-Whiteaker is entitled to damages in the amount of her unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including her attorneys' fees and costs.

73. At all times relevant to this action, Defendants willfully failed and refused to pay Stephen-Whiteaker overtime wages required by the FLSA, causing Stephen-Whiteaker to suffer damage in amounts to be proven at trial.

74. Defendants either recklessly failed to investigate whether their failure to pay Stephen-Whiteaker an overtime wage for the hours she worked in excess of 40 per week during the relevant time period violated the Federal Wage Laws of the United States, intentionally misled Stephen-Whiteaker to believe that Defendants were not required to pay him overtime wages, and/or Defendants concocted a scheme pursuant to which they deprived Stephen-Whiteaker the overtime pay she earned.

75. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

76. Defendants violated the FLSA without a good faith belief that their conduct was lawful.

77. Stephen-Whiteaker requests recovery of her attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b)

## COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.

78. Stephen-Whiteaker incorporates by reference the allegations in the preceding paragraphs.

79. At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the OMFWSA.

80. At all relevant times, Defendants have employed and continue to employ, "employees," within the meaning the OMFWSA.

81. Stephen-Whiteaker was an employee of Defendants as that term is defined by the OMFWSA.

82. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

83. Defendants failed to pay Stephen-Whiteaker overtime compensation for all hours she worked in excess of forty per week.

84. In denying Stephen-Whiteaker all overtime compensation due, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

85. As a direct and proximate result of Defendants' unlawful conduct, Stephen-Whiteaker has suffered and will continue to suffer a loss of income and other damages.

86. Having violated the OMFWSA, Defendant is liable to Stephen-Whiteaker pursuant to O.R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and reasonable attorneys' fees.

## COUNT III: FAILURE TO PAY WAGES IN VIOLATION OF R.C. § 4113.15 (OHIO PROMPT PAYMENT ACT) (Asserted Against Gasper Only).

87. Stephen-Whiteaker incorporates by reference the allegations in the preceding paragraphs.

88. During all times material to this complaint, Gasper was covered by the Ohio Prompt Payment Act, R.C. § 4113.15 ("OPPA") and Stephen-Whiteaker was employed by Gasper within the meaning of OPPA.

89. The OPPA requires that Gasper pay Stephen-Whiteaker all wages, including unpaid overtime wages on or before the first day of each month, for wages earned by Stephen-Whiteaker

during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of the month, for wages earned by Stephen-Whiteaker during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

90. At the conclusion of her term of employment with Gasper, Stephen-Whiteaker was not paid wages, to include all overtime wages due, within 30 days of performing the work. *See* O.R.C.§ 4113.15(B).

91. Stephen-Whiteaker's unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled paydays.

92. In violating the OPPA, Gasper acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF 29 U.S.C. § 215(A)(3).

93. Stephen-Whiteaker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

94. Pursuant to the FLSA, 29 C.F.R. § 215(a)(3), it is a violation for any employer to, "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or as testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

95. Stephen-Whiteaker complained to Defendants about their failure to pay her overtime.

96. Defendants took adverse actions against Stephen-Whiteaker in response to her complaints about not being overtime by taking adverse actions against her, to include removing several of her job duties; demoting her; and then refusing to correct their wrong doing, leading to Stephen-Whiteaker's constructive discharge.

97. There is a casual link between the adverse actions and the employment actions herein, including the constructive discharge of Stephen-Whiteaker.

98. As a result of Defendants' acts, Stephen-Whiteaker has suffered and will continue to suffer damages.

## COUNT V: RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION.

99. Stephen-Whiteaker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

101. Stephen-Whiteaker complained to Defendants about their failure to pay her overtime.

102. Defendants took adverse actions against Stephen-Whiteaker in response to her complaints about not being overtime by taking adverse actions against her, to include removing several of her job duties; demoting her; and then refusing to correct their wrong doing, leading to Stephen-Whiteaker's constructive discharge.

103. There is a casual link between the adverse actions and the employment actions herein, including the termination of Stephen-Whiteaker.

104. As a result of Defendants' acts, Stephen-Whiteaker has suffered and will continue to suffer damages.

105. Pursuant to O.R.C § 4111.14(J), Stephen-Whiteaker is entitled to an amount set by the court sufficient to compensate the Stephen-Whiteaker and deter future violations, but not less than one hundred fifty dollars for each day that the retaliation continued.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Charity Stephen-Whiteaker requests judgment against each

Defendant and for an Order:

a. Awarding Stephen-Whiteaker all unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b. Awarding damages, including actual, general, special, incidental, statutory, treble, liquidated, and consequential to Stephen-Whiteaker in an amount to be determined at trial;

c. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq;

d. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

e. Awarding pre-judgment and post-judgment interest as provided by law;

f. Awarding reasonable attorneys' fees and costs; and

g. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Charity Stephen-Whiteaker.*

## JURY DEMAND

Plaintiff Charity Stephen-Whiteaker demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**